# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VERILUX, INC.,             :
      Plaintiff,          :
                        :
v.                         :    Case No: 3:05cv254 (PCD)
                        :
LINAYA GAIL HAHN and    :
LIGHT FOR HEALTH, INC.     :
      Defendants.       :

## <u>RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Verilux, Inc., brought this action against Defendants Linaya Gail Hahn and Light For Health, Inc., under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, Connecticut state common law, and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b). Defendants have moved for summary judgment on Plaintiff's trademark infringement and unfair competition claims (Counts One through Four), arguing principally that Plaintiff cannot prove a likelihood of confusion between Plaintiff's and Defendants' marks. Defendants also move for summary judgment on Plaintiff's dilution claim (Count Five) on the ground that Plaintiff cannot prove ownership of a distinctive and famous mark. For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. No. 51] is **granted**.

## I.    BACKGROUND[1]

Plaintiff Verilux, Inc., is a Connecticut corporation licensed to operate in Vermont and Connecticut. (Defs.' Local 56 (a)(1) Statement ¶ 3.) Defendants are Light for Health, Inc., a corporation with its principal place of business in Denver, Colorado, and Linaya Gail Hahn, the owner and operator of Light for Health, Inc. (Id. ¶ 4.) Plaintiff and Defendants both sell lighting

---

[1]     The following undisputed facts are drawn from Defendants' Local 56 (a)(1) statement, and the Court resolves all disputed facts in favor of Plaintiff where there is evidence to support Plaintiff's allegations.

products that attempt to simulate natural daylight, using technology called "natural spectrum light" and "full spectrum" light. (Pl.'s Mem. Opp. Summ. J. at 5.)

Three hundred and sixty-five active registered trademarks in this country include the word SUNSHINE, several of which are owned by either Plaintiff or Defendants and are the subject of this dispute. (Id. ¶ 8.) Plaintiff owns the federally registered trademarks SUNSHINE IN A BOX (Reg. No. 2,379,703), SUNSHINE SIMULATOR (Reg. No. 2,947,065), and SUNSHINE IN A LAMP (Reg. No. 2,734,381), and has filed an application to register the trademark SUNSHINE LAMP (Serial No. 78,250,926). (Defs.' Local 56 (a)(1) Statement ¶ 1.) Plaintiff also owns and operates the website www.verilux.net. (Id. ¶ 5.) The packaging of Plaintiff's SUNSHINE IN A BOX and SUNSHINE IN A LAMP products displays Plaintiff's trade name, "Verilux." (Id. ¶ 10.)

Defendants own the federally registered trademark INDOOR SUNSHINE (Reg. No. 3,107,167). (Id. ¶ 2.)[2] Defendants' mark INDOOR SUNSHINE includes the text "Indoor Sunshine" as well as an accompanying logo, a graphic comprised of an arrow pointing through an open door. (Id. ¶ 9.) Defendants' INDOOR SUNSHINE product packaging displays Defendants' trade name, "Light for Health." (Id. ¶ 10.) Defendants used the trademark INDOOR SUNSHINE in commerce at least as early as June of 2002, and they first became aware of Plaintiff's marks in January of 2003 when Plaintiff opposed registration of Defendants' mark before the Trademark Trial and Appeal Board (TTAB). (Id. ¶¶ 6-7.)

---

[2] Defendants' Local 56(a)(1) statement reads "Plaintiff's registered the trademark INDOOR SUNSHINE," and Plaintiff admitted this fact. (Defs.' Local 56 (a)(1) Statement ¶ 2; Pl.'s Local 56 (a)(2) Statement ¶ 2.) The USPTO Certificate of Registration, however, indicates that Defendant Hahn is the owner of the trademark. (Pl.'s Ex. 3, Defs.' Doc. Produc. Bates No. 000166.) Because Defendants' use of the trademark INDOOR SUNSHINE is the basis for this trademark infringement claim, the Court will treat the substitution of "Plaintiff" into that paragraph of the Local 56(a)(1) statement as a typographical error.

On February 9, 2005, Plaintiff filed its Amended Complaint in this Court, alleging that

Defendants' use of its INDOOR SUNSHINE mark constitutes willful infringement of Plaintiff's

registered trademarks and has caused irreparable harm to Plaintiff, in violation of the Lanham

Act. Specifically, Plaintiff alleges claims against Defendants for: (1) infringement of a federally

registered trademark in violation of 15 U.S.C. § 1114 (Count One); (2) false designation of

origin and unfair competition in violation of 15 U.S.C. § 1125(a) (Count Two); (3) state common

law trademark infringement and unfair competition (Count Three); (4) unfair competition in

violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (Count Four); and (5)

trademark dilution in violation of 15 U.S.C. § 1125(c) (Count Five). Defendants moved to

dismiss all of Plaintiff's claims, and this Court denied Defendants' motion. Verilux v. Hahn,

No. 3:05CV254(PCD), 2006 WL 1526015, at *1 (D. Conn. May 31, 2006). During discovery,

Plaintiff produced no evidence of instances of actual confusion among consumers. (Defs.' Local

56 (a)(1) Statement ¶ 11.) Defendants now move for summary judgment on all of Plaintiff's

claims.

## II.     JURISDICTION AND STANDARD OF REVIEW

A motion for summary judgment is only appropriate where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden to

establish that there is no genuine issue of material fact, which it may satisfy by pointing to an

absence of evidence to support the nonmoving party's case. PepsiCo, Inc. v. Coca-Cola, Inc.,

315 F.3d 101, 105 (2d Cir. 2002) (per curiam). A genuine issue of material fact exists, however,

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "The court must resolve all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide."  Aldrich, 963 F.2d at 523.

Summary judgment in a trademark infringement action is appropriate where "the undisputed evidence would lead only to one conclusion" under the Polaroid test, see infra Part III.A.  Sports Auth., Inc. v. Prime Hosp. Corp., 89 F.3d 955, 960 (2d Cir. 1996) (quoting Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 478 (2d Cir. 1996)).  The task of this Court is thus "to determine whether any reasonable trier of fact could conclude that confusion is likely."  Id.

The Court has subject matter jurisdiction over Plaintiff's Lanham Act claims pursuant to 28 U.S.C. §§ 1331 and 1338, and over its Connecticut law claims pursuant to 28 U.S.C. §§ 1338 and 1367.  Pfizer, Inc. v. Miles, 868 F. Supp. 437, 441 (D. Conn. 1994).

## III.    DISCUSSION

### A.  Trademark Infringement Under the Lanham Act (Count One)

Plaintiff brings Count One pursuant to Section 1114 of the Lanham Act, which provides in relevant part that any person who uses a "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion" shall be liable in a civil action.  15 U.S.C. § 1114(1)(a).  To prevail on a trademark infringement claim, a plaintiff must prove that "it has a valid mark entitled to protection, and [that] defendant's use of it is likely to cause confusion."  Cadbury, 73 F.3d at 477 (quoting Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993)).  Moreover, a

4

plaintiff must show that there is a "probability of confusion, not a mere possibility." <u>Playtex</u>
<u>Prods., Inc. v. Georgia-Pacific Corp.</u>, 390 F.3d 158, 161 (2d Cir. 2004). In this case, Defendants
do not dispute the validity of Plaintiff's marks, but rather move for summary judgment on the
ground that there is no genuine issue of material fact as to whether consumers are likely to
confuse the source of the products in question. (Defs.' Mem. Supp. Summ. J. at 4.)

As a preliminary matter, the Court notes that Plaintiff refers to its "family of SUNSHINE
marks" throughout its pleadings and briefs filed in this action. A "family" of marks is a term of
art referring to "a group of marks having a recognizable common characteristic, wherein the
marks are composed and used in such a way that the public associates not only the individual
marks, but the common characteristic of the family, with the trademark owner." <u>J & J Snack</u>
<u>Foods Corp. v. McDonald's Corp.</u>, 932 F.2d 1460, 1462 (Fed. Cir. 1991). As the Federal Circuit
has explained, "[s]imply using a series of similar marks does not of itself establish the existence
of a family. There must be a recognition among the purchasing public that the common
characteristic is indicative of a common origin of the goods." <u>Id.</u> (finding that McDonald's
advertising and promotion of its "Mc" products firmly established its recognition as a family of
marks).

Verilux has adduced no evidence that the public associates the word SUNSHINE with its
business or with a common origin of its products, nor has the United States Patent and
Trademark Office granted Plaintiff the exclusive right to use the word SUNSHINE on its goods.
The fact that each of Plaintiff's registered trademarks includes the word SUNSHINE does not
grant Plaintiff the exclusive right to use the word SUNSHINE in commerce on its class of
products. Accordingly, to determine the existence of a genuine issue of material fact in
Plaintiff's claims, the Court must review the likelihood of confusion between Defendants'

5

INDOOR SUNSHINE mark and each of Plaintiff's marks, rather than between Defendants' mark and the group of Plaintiff's marks taken as a whole.

In determining the likelihood of confusion, courts in the Second Circuit are obliged to consider the eight factors set forth by Judge Friendly in Polaroid Corporation v. Polarad Electronics Corporation, 287 F.2d 492 (2d Cir. 1961):

> (i) the strength of the plaintiff's mark;
> (ii) the similarity of the parties' marks;
> (iii) the proximity of the parties' products in the marketplace;
> (iv) the likelihood that the plaintiff will bridge the gap between the products;
> (v) actual confusion;
> (vi) the defendants' intent in adopting their mark;
> (vii) the quality of the defendants' product; and
> (vii) the sophistication of the relevant consumer group.

Id. at 495-96; see also Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 116 (2d Cir. 2006). "When balancing the factors, district courts generally should not treat any single factor as dispositive; nor should a court treat the inquiry as a mechanical process by which the party with the greatest number of factors wins." Playtex, 390 F.3d at 162. A court must instead focus on the ultimate determination of whether there is a likelihood of confusion. Id.

*1. Strength of Plaintiff's Marks*

The first Polaroid factor, the strength of a trademark, is defined as the "tendency to identify the goods sold under the mark as emanating from a particular source." Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 873 (2d Cir. 1986) (citation omitted). In the Second Circuit, the strength of a trademark is determined by both its inherent distinctiveness and its acquired distinctiveness. Playtex, 390 F.3d at 163. The inherent distinctiveness of a mark is its theoretical potential to identify its holder's goods or services, Brennan's, Inc. v. Brennan's Restaurant, L.L.C., 360 F.3d 125, 131 (2d Cir. 2004), and is traditionally measured on the

following scale, from least to most distinctive: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc., 244 F.3d 88, 93 (2d Cir. 2001). The acquired distinctiveness of a mark is its fame, or "the extent to which prominent use of the mark in commerce has resulted in a high degree of consumer recognition." Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 147 (2d Cir. 2003) (citation omitted). To determine the level of a mark's acquired distinctiveness, a court looks to "[t]he use of all or part of a mark by third parties" because such use "weakens its overall strength." Time, Inc. v. Petersen Publ'g Co., 173 F.3d 113, 118 (2d Cir. 1999).

In this case, the parties dispute the inherent distinctiveness of Plaintiff's marks. Defendants argue that Plaintiff's marks are merely descriptive, while Plaintiff urges that its marks are suggestive.[3] (Defs.' Mem. Supp. Summ. J. at 5; Pl.'s Mem. Opp. Summ. J. at 10.) To prove its position, Plaintiff relies almost entirely on its trademarks' registration certificates, which Plaintiff claims were issued by the USPTO "without a requirement to prove acquired distinctiveness or secondary meaning." (Pl.'s Mem. Opp. Summ. J. at 8-10.) The Lanham Act provides that a registered trademark is entitled to a rebuttable presumption that it is more than merely descriptive. 15 U.S.C. § 1115(a). A defendant may rebut that presumption by showing that the trademark is not inherently distinctive, and registration itself is not evidence of how the public actually views a given trademark. Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,

---

[3]     As an aside, Plaintiff also argues that Defendants may not assert this defense because its marks are incontestable. (Pl.'s Mem. Opp. Summ. J. at 10.) It is true that a registered mark becomes incontestable after five years' registration pursuant to 15 U.S.C. § 1065, and thus a defendant may not successfully claim that the plaintiff's mark is not entitled to protection merely because it is descriptive. Gruner + Jahr, 991 F.2d at 1076-77. Plaintiff's SUNSHINE IN A BOX, SUNSHINE SIMULATOR, and SUNSHINE IN A LAMP marks, however, have been registered since August 2000, May 2005, and July 2003, respectively. (Pl.'s Ex. 2, Pl.'s Trademark Registrations.) Plaintiff filed this action in February of 2005. Therefore, Plaintiff's marks are not incontestable because at the time it filed this action, none of its marks had been registered for five years or more.

192 F.3d 337, 345 (2d Cir. 1999). Instead, whether a mark is descriptive or suggestive depends on consumers' perception of its inherent distinctiveness. Id. at 344; Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 74 (2d Cir. 1988).

A descriptive mark, as the name indicates, describes the product. Gruner + Jahr, 991 F.2d at 1076; Playtex, 390 F.3d at 163. Examples include "TRIM" for fingernail clippers, and "COCO-QUININE" for chocolate-flavored quinine. Gruner + Jahr, 991 F.2d at 1076. A suggestive mark, on the other hand, suggests the product, but requires some imagination on the part of the consumer to grasp the nature of the product (e.g., "ORANGE CRUSH" for an orange-flavored beverage). Id. The Court agrees with Plaintiff that its SUNSHINE IN A BOX mark is suggestive. The words SUNSHINE IN A BOX do not immediately describe a lighting product or its characteristics, like "COCO-QUININE" does. See Gruner + Jahr, 991 F.2d at 1076 (finding that without its registration, the PARENTS mark used as a magazine title would be merely descriptive). SUNSHINE IN A BOX could be any number of products—for example, suntan lotion, hair dye, or laundry detergent. Therefore, Plaintiff's SUNSHINE IN A BOX mark is suggestive, not descriptive, because it requires that one use some imagination to bring light bulbs or fixtures to mind.

SUNSHINE SIMULATOR, SUNSHINE IN A LAMP, and SUNSHINE LAMP (Plaintiff's unregistered trademark), however, are less inherently distinctive for various reasons. First, the rebuttable presumption created by the USPTO's registration of a mark does not apply to Plaintiff's SUNSHINE LAMP mark because it has not been registered, and Plaintiff has submitted no evidence relating to its use of that mark in commerce. SUNSHINE SIMULATOR, which is registered, comes closer to describing the nature of the product; a reasonable person might think of a lighting fixture or bulb upon hearing the name. This mark is thus weaker than

SUNSHINE IN A BOX and is only descriptive. Similarly, the fact that the SUNSHINE LAMP and SUNSHINE IN A LAMP marks include the word "lamp" would seem to plainly indicate that they refer to apparatuses for lighting, and are therefore descriptive. Contrary to ordinary usage, however, the SUNSHINE IN A LAMP mark is used by Plaintiff as the name of one of its product catalogs, requiring some imagining by the consumer and strengthening the mark a bit. (Pl.'s Ex. 3.) The Court thus finds that SUNSHINE SIMULATOR and SUNSHINE LAMP are merely descriptive, while SUNSHINE IN A LAMP is slightly suggestive.

After classifying a mark on the scale of inherent distinctiveness, the second step in the inquiry is to determine its degree of acquired distinctiveness, which involves looking both at the fame of the mark and third-party usage of the term as a mark, especially in the market in question. See Time, 173 F.3d at 118. Defendants argue that the 365 active registered trademarks using the word "sunshine" weaken any inherent distinctiveness Plaintiff's marks might have. (Defs.' Mem. Supp. Summ. J. at 5.) However, "[t]he significance of third-party trademarks depends wholly upon their usage," Scarves by Vera, Inc. v. Todo Imps. Ltd., 544 F.2d 1167, 1173 (2d Cir. 1976), and existence of these 365 trademarks is not evidence of what happens in the marketplace. Id. at 1174 (finding no weakening of plaintiff's mark where defendant produced no evidence that the trademarks were "actually used by third parties, that they were well promoted or that they were recognized by consumers"). Defendants have introduced no evidence showing actual use of these trademarks, how well they are marketed, or how well known they are, any of which might allow this Court to conclude that Plaintiff's marks have been weakened. See id. On the other hand, Plaintiff has provided the Court with no evidence that would suggest any of its marks have acquired distinctiveness, either through advertising, consumer studies or other indicators of fame. Omicron Capital, LLC v. Omicron

Capital, LLC, 433 F. Supp. 2d 382, 390 (S.D.N.Y. 2006) (noting factors relevant to this inquiry and concluding that "[e]ven if [Plaintiff's mark] is considered to be suggestive . . . no evidence has been submitted to demonstrate acquired distinctiveness"). Accordingly, finding that the evidence shows that Plaintiff's marks are relatively inherently distinctive but does not show that they have acquired distinctiveness, the Court finds that the first Polaroid factor, strength, slightly favors Plaintiff.

*2. Similarity of the Marks*

In considering the second Polaroid factor, the similarity of Plaintiff's and Defendants' marks, the Court looks to whether the similarity of the marks is likely to cause confusion among potential customers. Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 394 (2d Cir. 1995). When no question of likelihood of confusion is presented because the marks are so dissimilar, similarity can be a dispositive factor. Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 46 (2d Cir. 2000). Defendants argue that their mark INDOOR SUNSHINE is sufficiently dissimilar from each of Plaintiff's marks so as to warrant summary judgment. (Defs.' Mem. Supp. Summ. J. at 6.) The Court agrees.

The Second Circuit has stated that the prominent placement of a company's trade name on its product packaging weighs heavily against a finding of consumer confusion. Cf. Nabisco, 220 F.3d at 47-48 (dissimilarity of DENTYNE ICE and ICE BREAKERS trademarks warranted summary judgment because use of trade name DENTYNE on DENTYNE ICE "significantly reduces, if not altogether eliminates, any likelihood of confusion"). The record contains images of the packaging for Defendants' INDOOR SUNSHINE full spectrum light bulbs and various advertisements for INDOOR SUNSHINE. (Pl.'s Ex. 3.) In addition to clearly displaying the registered trademark and logo INDOOR SUNSHINE, this packaging also includes Defendants'

10

trade name, "Light for Health," on the front side of the packaging.  (Id.)  Further, the

advertisements prominently feature the Defendants' trade name and logo.  Likewise, Plaintiff's

packaging for its SUNSHINE IN A BOX "natural spectrum light bulbs" prominently displays

Plaintiff's trade name, "Verilux."  (Pl.'s Resp. to Defs.' Request for Docs. Nos. 0285 and 0095.)

The Court therefore finds that Plaintiff has not shown that the marks in question are confusingly

similar.

Additionally, the differences in the physical characteristics of and the uses of the

products described by the parties' marks dispel any remaining confusion and warrant a finding

that the marks are dissimilar as a matter of law.  Defendants' INDOOR SUNSHINE bulb is a

new, spiral-shaped, energy-saving light bulb, while Plaintiff's SUNSHINE IN A BOX bulb is a

light bulb in the traditional, solid bulb shape.  SUNSHINE IN A LAMP appears to be marketed

only as the name for a catalog.  (Pl.'s Ex. 3.)  No product in commerce, and no light bulb in

particular, is marketed under the trademark SUNSHINE IN A LAMP.  Nor is Plaintiff's other

mark, SUNSHINE SIMULATOR, used to describe light bulbs, but rather it appears to be used in

connection with light fixtures, which are sold as "HappyLite Sunshine Simulators."  Plaintiff's

substitution of the word "HappyLite" before "Sunshine Simulator" serves only to diminish

whatever degree of similarity might be found between Plaintiff's and Defendants' marks, and in

turn decrease the likelihood of confusion among consumers as to the source of the products in

question.

Given the existence of the parties' trade names on the products' packaging, the difference

in shape of the products, and the at-best marginal similarity between the marks at issue, the

Court finds the parties' marks to be dissimilar as a matter of law.  Plaintiff has provided no

evidence that would demonstrate its products exist in a marketplace context alongside

Defendants' so as to create a probability that an appreciable number of potential consumers would confuse the source of the products. See Mushroom Makers, Inc. v. R. G. Barry Corp., 580 F.2d 44, 47 (2d Cir. 1978). This factor therefore favors Defendants.

### 3. Proximity of the Products

In analyzing the third Polaroid factor, proximity, the Court focuses on "the competitive distance between the products." Arrow Fastener, 59 F.3d at 396. "In assessing this factor, the court may consider whether the products differ in content, geographic distribution, market position, and audience appeal." Savin Corp. v. Savin Group, 391 F.3d 439, 459 (2d Cir. 2004) (internal quotation marks omitted). The ultimate inquiry is whether there is an overlapping client base that creates a potential for consumer confusion. Brennan's, Inc., L.L.C., 360 F.3d at 134 (2d Cir. 2004).

Plaintiff argues that it uses its marks "on identical and competing products" as the Defendants, which makes confusion "all the more likely." (Pl.'s Mem. Opp. Summ. J. at 5.) Plaintiff has offered no evidence to advance the claim, however, that it markets products that are "identical" to Defendants'. Plaintiff contends that because it markets lighting products, including lamps, light fixtures and light bulbs, directed toward the wellness lighting market, and because both parties advertise over the Internet, "consumers seeking lighting products that promote health are likely to encounter both the [Plaintiff's] SUNSHINE marks and the Defendants' INDOOR SUNSHINE marks in their search." (Id.) Consumers may very well encounter both Plaintiff's and Defendants' marks, but it does not necessarily follow that there exists a likelihood of confusion between the marks.

Additionally, Plaintiff has produced no evidence of any instance where the goods actually compete in the marketplace. The fact that both parties have websites does not

12

demonstrate that there is an overlapping consumer base. Moreover, Defendants' website address is clearly labeled www.lightforhealth.com. (Pl.'s Ex. 1.) As discussed above, <u>supra</u> Part III.A.2, the presence of a party trade name militates against a finding of likelihood of confusion. <u>See Nabisco</u>, 220 F.3d at 46. Nor has Plaintiff identified the geographic area in which it markets its products or the retailers that sell its products, refusing to disclose this information on the basis that it constitutes trade secrets. (Pl.'s Resp. to Defs.' Interrog. # 8.) Without this information, the Court cannot conclude that there is an overlapping client base that creates a potential for consumer confusion because the competitive distance between the products is unclear. <u>Cf. Hasbro, Inc.</u>, 858 F.2d at 77 (2d Cir. 1988) (competitive proximity was "indisputable" where both companies sold 3 3/4 inch military action figures side-by-side in the same stores). Accordingly, this <u>Polaroid</u> factor militates against a finding of likelihood of confusion, and favors Defendants.

### 4. Bridging the Gap

The fourth <u>Polaroid</u> factor looks to either the likelihood that Plaintiff will enter Defendants' business or the average customer's perception of the likelihood that Plaintiff will enter Defendants' market. <u>Sports Auth.</u>, 89 F.3d at 964. Accepting Plaintiff's contention that it produces identical goods as Defendants would render this factor irrelevant. <u>Star Indus., Inc. v. Bacardi & Co.</u>, 412 F.3d 373, 387 (2d Cir. 2005) (because parties' products "are already in competitive proximity, there is really no gap to bridge, and this factor is irrelevant . . . to the <u>Polaroid</u> analysis . . ."). Because the parties have not addressed this factor, however, and because the competitive distance between the Plaintiff's and Defendants' products is unclear, <u>see supra</u> Part III.A.3, this factor does not favor either party.

### 5. Actual Confusion

13

The Court next looks to the fifth <u>Polaroid</u> factor of actual confusion.  Evidence of actual confusion is not necessary to a trademark infringement claim under the Lanham Act, but is, of course, proof of likelihood of confusion.  <u>Savin</u>, 391 F.3d at 459.  Plaintiff has offered no evidence of any instance of actual confusion, either by producing consumer surveys or affidavits of experts, and admits it has none.  (Pl.'s Local 56(a)(2) Statement ¶ 11.)  A lack of survey evidence weighs against a finding of confusion.  <u>Merriam-Webster, Inc. v. Random House, Inc.</u>, 35 F.3d 65, 72 (2d Cir. 1994).  This factor thus favors Defendants.

### 6. *Good Faith*

The sixth <u>Polaroid</u> factor, good faith, focuses on whether the Defendants adopted their mark with the intention of capitalizing on Plaintiff's reputation and goodwill and any confusion between the two products.  <u>Cadbury</u>, 73 F.3d at 482-83.  On summary judgment, subjective issues such as good faith are singularly inappropriate for determination.  <u>Id.</u> at 483.  Defendants argue that they had no bad faith in adopting its own mark because they began using INDOOR SUNSHINE as early as 1989 and only became aware of Plaintiff's marks when Plaintiff opposed Defendants' application for its INDOOR SUNSHINE trademark in 2003.  (Defs.' Mem. Supp. Summ. J. at 8.)  Plaintiff disputes the date of Defendants' first use of INDOOR SUNSHINE, claiming it was actually June 2002.  (Pl.'s Local 56(a)(2) Statement ¶ 6.)  Even assuming Plaintiff is correct, however, nothing in the record supports a finding of bad faith.  The parties agree that Defendants only learned of the existence of Plaintiff's marks in January of 2003.  (Defs.' Local 56 (a)(1) Statement ¶ 7.)  Even if Defendants had known about Plaintiff's marks when adopting their own, prior knowledge of a senior user's mark, without more, does not create an inference of bad faith.  <u>Playtex</u>, 390 F.3d at 166.  Nothing else in the record supports a finding

that Defendants' adopted their mark in anything other than good faith.  Accordingly, this factor favors the Defendants.

### 7.  The Quality of the Defendants' Product

The Court next turns to the seventh factor of the Polaroid test: the quality of the Defendants' product.  A marked difference in quality between the Defendants' product and Plaintiff's tends to reduce the likelihood of confusion, but it may increase the chance of actual injury through dilution.  Savin, 391 F.3d at 461.  "Conversely, where the junior user's products are of approximately the same quality as the senior user's, there is a greater likelihood of confusion, but less possibility of dilution."  Id.  Quality of product is distinct from competitiveness.  Gruner + Jahr, 991 F.2d at 1079.  "Generally, quality is weighed as a factor when there is an allegation that a low quality product is taking unfair advantage of the public good will earned by a well-established high quality product."  Id.  Plaintiff does not address the quality of Defendants' product in this regard.  Therefore, this factor of the Polaroid test favors Defendants.  See Sports Auth., 89 F.3d at 965 ("[Plaintiff] has set forth no evidence that it would be injured by being associated with [Defendant's product] and, accordingly, we agree with the district court that this factor favors [Defendant].").

### 8.  Sophistication of Purchasers

The final factor in the Polaroid test examines the sophistication of the consumers in the relevant market.  Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc., 830 F.2d 1217, 1228 (2d Cir. 1987).  Generally, sophistication of consumers reduces the likelihood of confusion.  Id.  Defendants argue that because its light bulbs (as well as Plaintiff's SUNSHINE IN A BOX bulbs) cost about twenty dollars each and because Plaintiff's website includes detailed product descriptions, one could conclude that consumers buying these products are more sophisticated

15

and less likely to be confused as to the source of the products than would ordinary consumers. (Defs.' Mem. Supp. Summ. J. at 10.)

Defendants have not proven as a matter of law that consumers who buy wellness lighting products are any different than ordinary consumers. Consumer sophistication may be proven by direct evidence such as expert opinions or surveys, Star, 412 F.3d at 389, but neither party has provided such evidence in this case. "[I]n some cases a court is entitled to reach a conclusion about consumer sophistication based solely on the nature of the product or its price." Id. (citing Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 219 (2d Cir. 2003)). The Court declines to infer that the consumer of a healthy light bulb is somehow more sophisticated than the consumer of an ordinary light bulb simply because it costs twenty dollars and its product specifications can be found on a website. Cf. Arrow Fastener, 59 F.3d at 399 (buyers of $400 pneumatic staplers must possess a high level of knowledge, pay substantial amount of money, and engage in a detailed purchasing process in order to buy product). Because Defendants have not proven that consumers of wellness lighting products are sophisticated, this factor favors Plaintiff.

### 9. Balancing the Polaroid Factors

In sum, only two of the Polaroid factors, the strength of Plaintiff's marks and the lack of consumer sophistication, support Plaintiff's trademark infringement claim. Further, Plaintiff has not made a strong showing on either of these factors. On the other hand, four Polaroid factors— the similarity of the marks, actual confusion, bad faith, and quality of Defendants' product—all favor Defendants. Further, Plaintiff has not submitted evidence which would allow this Court to draw conclusions as to competitive proximity or likelihood of bridging the gap. Plaintiff has also not presented any evidence as to the marketplace context in which the parties' products

allegedly co-exist, or how Defendants' product might lead to consumer confusion. On balance, the Court finds that Plaintiffs have not raised a genuine issue of material fact as to whether there exists a likelihood of confusion between the source of Defendants' and its products.

Reduced to its essence, Plaintiff's trademark infringement claim centers on the fact that Defendants sell a light bulb whose name includes the word SUNSHINE. Plaintiff, however, does not possess a registered trademark for the word SUNSHINE in connection with every conceivable lighting product. See Western Pub. Co. v. Rose Art Indus., Inc., 910 F.2d 57, 63 (2d Cir. 1990) (no likelihood of confusion because plaintiff, maker of "Little Golden Book" products, could not "appropriate to itself the exclusive use of the word 'golden' in connection with *every* children's book, toy or game"). Despite the use of the word "sunshine" in both parties' marks, the Court does not find them sufficiently similar to suggest trademark infringement. No evidence in the record supports a finding that Defendants' use of its INDOOR SUNSHINE mark is likely to cause confusion among an appreciable segment of the purchasing public as to the source of its product, see Gruner + Jahr, 991 F.2d at 1079-80, nor does the record show any instance of actual confusion or bad faith on the part of Defendants. Accordingly, because Plaintiff has failed to show the existence of any genuine issue of material fact, summary judgment on Count One must be granted.

## B. False Designation of Origin (Count Two)

Plaintiff brings Count Two pursuant to Section 1125(a) of the Lanham Act, which is not limited to registered trademarks, but similarly makes liable:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . .

15 U.S.C. § 1125(a).  As with actions for trademark infringement, the ultimate inquiry in most actions for false designation of origin is whether there exists a likelihood that consumers will be confused as to the source of the product.  Lois Sportswear, 799 F.2d at 871.  For the reasons discussed in relation to Count One, no genuine issue of material fact exists as to likelihood of confusion.  See supra Part III.A.  Accordingly, Plaintiff's false designation claim must fail as well, and summary judgment is granted for Defendants on Count Two.

### C.  Common Law Trademark Infringement and Unfair Competition (Count Three)

Plaintiff brings Count Three against Defendants for state common law trademark infringement and unfair competition.  The test for trademark infringement and unfair competition under Connecticut law is identical to the test under the Lanham Act.  Country Floors, Inc. v. Mizak, No. 3:91CV628 (JAC), 1993 U.S. Dist. LEXIS 20213, at *20-21 (D. Conn. Jun. 10, 1993).  See also Private Eyes Sunglass Corp. v. Private Eye Vision Center of New Milford, P.C., No. CIV. B-89-45 (TFGD), 1992 WL 464228, at *11 (D. Conn. 1992) (common law claims were necessarily dismissed where court found no likelihood of confusion); Miss Universe, Inc. v. Patricelli, 271 F. Supp. 104, 109 (D. Conn. 1967) ("[T]here is no real difference between the relevant state and federal law . . . .").  The Connecticut Supreme Court has held that:

> The question to be determined is whether . . . as a matter of fact, the name is such as to cause confusion in the public mind as between the plaintiff's business and that of the defendant, resulting in injury to the plaintiff . . . .  It is not sufficient that some person may be misled, but the similarity must be such that any person, with such reasonable care and observation as the public generally are capable of using and may be expected to exercise, would be likely to mistake one for the other.

<u>Mohegan Tribe of Indians of Conn. v. Mohegan Tribe and Nation, Inc.</u>, 769 A.2d 34, 47 (Conn. 2001) (<u>quoting</u> <u>Shop-Rite Durable Supermarket, Inc. v. Mott's Shop Rite of Norwich, Inc.</u>, 377 A.2d 312, 314 (Conn. 1977)).  For the reasons set forth in Part IV.A of this opinion, Plaintiff has failed to offer any evidence raising a genuine issue of material fact regarding likelihood of confusion between Defendants' and its marks, and summary judgment is therefore appropriately granted to Defendants on Count Three.

### D. CUTPA Claim (Count Four)

In Count Four, Plaintiff alleges that Defendants violated Section 42-110(b) of the Connecticut Unfair Trade Practices Act, which provides in relevant part, "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  "Courts in Connecticut have held that a finding of likelihood of confusion under the Lanham Act establishes a violation of CUTPA based on unfair competition."  <u>Omega S.A. v. Omega Eng'g, Inc.</u>, 396 F. Supp. 2d 166, 184 (D. Conn. 2005) (<u>citing</u> <u>Nabisco Brands, Inc. v. Kaye</u>, 760 F. Supp. 25, 29 (D. Conn. 1991)) (holding that plaintiff's CUTPA claim failed as a matter of law because plaintiff did not raise issue of material fact as to likelihood of confusion and pointed to no "immoral, unethical, oppressive, or unscrupulous" conduct on the part of the defendant).  Plaintiff has likewise failed to raise an issue of material fact regarding likelihood of confusion, and has presented no evidence that Defendants have engaged in deceptive or unfair conduct or have otherwise offended public policy.  <u>See</u> <u>New Colt Holding Corp. v. RJG Holdings of Florida, Inc.</u>, 312 F. Supp. 2d 195, 236 (D. Conn. 2004) (<u>citing</u> <u>Web Press Servs. Corp. v. New London Motors, Inc.</u>, 525 A.2d 57, 65 (Conn. 1987)) (explaining what may be shown to establish a violation of CUTPA).  Accordingly, summary judgment on Count Four is granted.

### E. Dilution (Count Five)

In Count Five, Plaintiff alleges that Defendants' marks impermissibly dilute Plaintiff's marks in violation of the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c) (2000). The FTDA provides in relevant part: "the owner of a *famous mark* . . . shall be entitled to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and *causes dilution* of the distinctive quality of the mark . . . ." Id. (emphasis added). The Supreme Court held that the text of the FTDA "unambiguously requires a showing of actual dilution, rather than a likelihood of dilution." Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 433 (2003). Under the FTDA, a plaintiff can obtain monetary relief if it proves willful infringement of its marks in addition to actual dilution. Dan-Foam A/S v. Brand Named Beds, LLC, No. 06 CIV. 6350 SAS, 2007 WL 1346609, at *6 (S.D.N.Y. May 4, 2007).

In 2006, Congress enacted the Trademark Dilution Revision Act ("TDRA"), amending the FTDA. Under the TDRA:

> [T]he owner of a *famous mark* . . . shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is *likely to cause* dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1) (2006) (emphasis added). The TDRA's "likelihood of dilution" standard rejects the showing of "actual dilution" that the Supreme Court held was required by the FTDA. Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 477 F.3d 765, 766 (2d Cir. 2007). The TDRA restricts damages to actions where the mark complained of was introduced into commerce after October 6, 2006. Dan-Foam A/S, 2007 WL 1346609, at *6.

Plaintiff filed this action in February of 2005, before the TDRA came into effect.  The Second Circuit has held that the TDRA applies retroactively to a claim filed before the statute went into effect "to the extent that [the plaintiff] seeks injunctive relief for its dilution claim." Starbucks, 477 F.3d at 766.  Thus, to the extent Plaintiff seeks injunctive relief, the TDRA applies; insofar as Plaintiff seeks damages, the FTDA applies.  See Dan-Foam A/S, 2007 WL 1346609, at *6 ("To the extent that [a plaintiff] seeks monetary relief for its dilution claim, the FTDA standard for obtaining remedies other than injunctive relief still governs.").  In any event, both the TDRA and FTDA require that Plaintiff prove that its marks are famous.  Defendants move for summary judgment on Count Five on the ground that Plaintiff has failed to prove that its marks are famous.  The Court agrees.

*1. Fame under the FTDA*

Under the FTDA, a court may consider, but is not limited to, the following factors in determining whether a mark is distinctive and famous:

> (A) the degree of inherent or acquired distinctiveness of the mark;
> (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
> (C) the duration and extent of advertising and publicity of the mark;
> (D) the geographical extent of the trading area in which the mark is used;
> (E) the channels of trade for the goods or services with which the mark is used;
> (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
> (G) the nature and extent of use of the same or similar marks by third parties; and
> (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(1) (2000).  The Second Circuit requires that a trademark have a significant degree of inherent distinctiveness and a high degree of acquired distinctiveness in order to meet the fame requirement of the FTDA.  Savin, 391 F.3d at 450.  This high degree of fame must exist

in the general marketplace, not just within a "niche market."  Id. at 450 n.6 (finding issue of fact

regarding fame where plaintiff spent over $20 million on advertising in one year and achieved

annual revenues of $675 million, in addition to regularly featuring its product in print

advertisements such as *Newsweek*, *Time*, and *Business Week*, trade magazines, and tradeshow

promotions).  While the Court has serious doubts with respect to the degree of inherent

distinctiveness of Plaintiff's marks, Plaintiff has unquestionably failed to prove that its marks are

famous under the FTDA.  In the absence of any evidence as to the geographical scope of

Plaintiff's advertising, the use of its products in commerce, or the extent of recognition of

Plaintiff's products within the marketplace, the Court cannot conclude that Plaintiff's marks are

famous for purposes of the FTDA.

### 2.  Fame under the TDRA

Under the TDRA, a plaintiff still must prove that its mark is truly famous, meaning that it

is widely recognized by the general consuming public of the United States as a designation of

source of the goods or services of the mark's owner.  15 U.S.C. § 1125(c)(2)(A) (2006).  This

amended section lists four factors, instead of the previous eight under the FTDA, that a court

may use in determining fame:

> (i) The duration, extent, and geographic reach of advertising and publicity of the
> mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services
> offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act
> of February 20, 1905, or on the principal register.

Id.  Plaintiff has failed to offer any evidence tending to prove any of the fame factors under the

TDRA, other than the fact that its marks were registered.  Rather, Plaintiff asserts, without

setting forth any factual basis, that its marks are "well-known" in the relevant industry.  (Pl.'s

Ex. 8; Pl.'s Mem. Opp. Summ. J. at 13.)  Even assuming Plaintiff is well-known in the lighting

products market, such "niche market" reputation is insufficient under both the TDRA and FTDA

to be considered famous.  Dan-Foam, 2007 WL 1346609, at *6 & n.90.  Because no evidence in

the record raises a genuine issue of material fact as to whether Plaintiff's marks can be

considered "famous" under either the FTDA or TDRA, Plaintiff's federal dilution claim cannot

be sustained, and summary judgment must be granted for Defendants on Count Five.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 51] is

**granted**.  Judgment is entered for Defendants on all counts.  The clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, August  7 , 2007.


_____ /s/ _____

Peter C. Dorsey, U.S. District Judge
United States District Court